12-10-2009

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

2009 DEC 10 PM 3:08

LORETTA G. WHYTE
CLERK

APSingh 12-10-2009

AMAR PAUL SINGH SAWHNEY, ~~FOD, JAGJIT & AMARJIT SAWHNEY~~

VS

TD-Ameritrade, et al

09-7651
SECT. L  MAG. 1

COMPLAINT FOR MOTION TO VACATE AWARD (FINRA COPY ENCLOSED)

Now comes Amarpaul Singh Sawhney, who lives in Metairie, LA, State of Louisiana.

Mainly on June 26, 2008 and Oct. 10, 2008 TRADINGS

I am suing TD-Ameritrade, et al, for negligence in:

P.S.
The Honorable Judge: Pls. review the attached documents for details. Thank you!

1. NOT RESOLVING THEIR CHRONIC operational problems relating to their ONLINE OPTIONS TRADING, DESPITE The claimant's as well as TD-Ameritrade's own managers' and representatives numerous complaints and concerns for a long time of several years. TD-A reps always acknowledged/admitted the ONLINE TRADING of CERTAIN COMPLEX OPTIONS and said that they were fully aware of the ~~opera~~ problematic operation and that they (TD-A) were working on to "OVERHAUL" the operation/system.

2. Extending ~ $250K in the real-time, margin "Liqn." and the advance (debt) to the Claimant, when the Real-Time A/c value was only $60K liquidation to debt ratio was at a dangerously low level of ~12.5% and even then allowed the claimant to legally purchase 20K GM shares, which predictably and obviously further increased the margin debt to ~$630K with the Liquidation-to-debt ratio For $350 to ~9 (again a dangerously low level, according to TD-A's RISK DEPT's guidelines) and the account's liquidation value of only about $50K, although it was ~$150K a day before and the A/c had more than $1 million in cash on June 10-12, 2008.   P.T.O → p 2

✓ Process
✗ Ckd
   CtRmDep
   Doc. No.

Contd. from page 1:

3. TD-Ameritrade <u>denied</u> the claimant's legitimate orders to sell COVERED <u>LEAP</u> CALL OPTIONS (WGMA<u>B</u>) on the <u>20K</u> GM shares that TD-A approved the purchase of with the real-time funds of ~$250K made available for <u>purchase</u> <u>of</u> <u>securities</u> <u>and</u> <u>options</u>. Please note that the <u>covered</u> <u>call</u> <u>options</u> do not require any additional margin maintenance (MMR), and that the sale of covered call options bring in money to the account. <u>Despite</u> <u>repeated</u> <u>orders</u> of selling the GM covered calls <u>up to</u> 700 (WGMA<u>B</u>) corresponding to 70K [<sup>OLD</sup>50K + <sup>NEW</sup>20K] GM <sup>Long</sup> shares in the A/c, TDA denied all of the orders, which could bring in ~$300K and considerably reduced the ballooning debt of ~$730K, <u>created in the first place</u> by & due to TD-A's ① serious problematic online options trading system (admitted by TDA); and due to ② overextending <sup>huge</sup> margin debt, and ③ unimaginably denying the sale of covered calls to bring new money (w/o MMR) in the account, eventhough TD-A still continued to approve purchase of additional 5000 GM shares, while denying my legitimate sale of COVERED CALL OPTIONS that were bringing $4.<sup>20</sup> a contract, thus reducing the effective price/cost of a GM share to ~$7.<sup>30</sup>, while the options in the money were worth $10.<sup>00</sup> ①

P.T.O.
→ To p 3

Contd. from p-2

4. TD-A arrogantly and using a "delay" trick denied the claimant's repeated requests (in fact, BEGGINGS) to put the disputed trades back on track by REPLENISHING (NOT REVERSING) AT THE CLAIMANTS' OWN COSTS/LOSSES due to any unfavorable price fluctuations in the disputed securities/trades involved.

In summary, I had invested my entire life's savings & investments of ~ a million dollars with TD-A during the past ten (10) years, in which TD-A charged my A/c for HUNDREDS OF THOUSANDS DOLLARS IN TRANSPARENT COMMISSIONS & INTEREST CHARGES ALONE. On June 26, 2008, TD-A, because of their serious problems & errors, stated above, destroyed sustainability of the account by a sellout of 40K GM shares, 20K of which TD-A in themselves, permitted me to buy with the Real-Time margin funds made available (Extended Margin debt to $630K).

On Oct 10, 2008, TD-A totally destroyed the A/c with a defeat of ~$1143.00 and arrogantly denied, using the delay tactic, to put/replenish the disputed trades (only 3 or 4) back on track at my costs/losses upto $10K (WIRE).

In view of all the Facts (100%) presented in the submissions to TD-A, FINRA, and TD-A's Counsel, I am seeking justice

P.T.O → p 4

from your honor by asking TD-Ameritrade to pay at least $750K for the financial, emotional and related losses/damages caused by TD-A, in the first place by erroneously extending the margin debt and not allowing me to sell upto 700 WGM A$\underline{B}^{\$10}$ (or, even 700 WGM A$\underline{A}^{\$5}$, or even A$\underline{Z}^{\$25}$) covered calls that would have credited the A/c by at least ~ $300K and possibly much more with WGM A$\underline{A}$ covered calls, w/o any additional margin requirement of their own. Since the destruction of my A/c on June 26 and Oct 10, 2008, caused by TD-A's sellouts, I have not been able to invest and/or recover ONE dollar until today (12-10-09), when the market recently has gone up 50%. Had TD-A permitted me to sell the legitimate covered calls, or at least put the A/c on track as repeatedly requested to TD-A reps, those calls would have been worth $300K (WGM A$\underline{B}$) to $750K (for A$\underline{Z}$-covered calls) the day GM became bankrupt. [viz.].

My case materials of > 500 pages will be brought for your 1st-hand review, whenever you so demand to fully & truly understand the case.

→ To p. 5.

Finally, my dear Honorable Judge, I kindly request you to please review the attached letter to Ms. Sorrentino, FINRA, Case Administrator, in order to fully comprehend where I am coming from.

Without offending anyone in the Panel, I must reiterate here that the Panel executed the Award, dtd 11-20-09, without fully understanding the subject matter, viz., the main, underlying issues of TD-A's operation and serious errors described above. I believe, they did not even fully read all of my case materials and submissions. In a way, I was even discouraged to fully present the evidence-pertinent material. I had (wrongly) presumed that the Panel members had thoroughly reviewed the submissions. It was clear to me that they indeed had not fully understand the main, underlying issues relating or pertaining to TD-A (company), in particular.

I admit that I had never ever been involved in any arbitration or lawsuit in my entire life (72). I wonder why would the original panel comprised of an honorable retired judge (chairman) and another panel member (another attorney) withdraw just a week or so before the Hearing!

Sincerely,   (A.P.S. SAWHNEY -
APS/ps.         4709 - SHERIDAN Ave.
(paulsawhney@hotmail.com)   METAIRIE, LA - 70002)

Tel: 504-286-4568 (W)
      ,,   455-8568 (H).