November 22, 2009

JoAnne Sorrentino
Case Administrator
FINRA, FL

Subject: FDRA No. 08-04168  Sawhney Vs TD-Ameritrade, et al

Dear Ms. Sorrentino:

Thank you for your fax, dated November 20, 2009, informing me about the Panel Award on the subject case. First of all, I must mention here that I was pleased with the way and manner the Panel conducted the hearings on the subject case. This was my first such sitting ever in any judicial format. However, I obviously am quite disappointed about the Award and particularly about **the inadequacy of the description of the information and reasons** cited in the Panel's "Case Information," "Case Summary," "Relief Requested," and, more importantly, the "Other Issues Considered and Decided," based on which the Panel decided the subject Award. I shall immediately pay the required fees, etc., when I receive the FINRA invoice.

Please note that immediately after receiving the Respondents' Counsel's (Ms. Janine Lucas, Esq.) letter stating that my payment of $1143 for the account deficit (that was irresponsibly maintained by TD-A on October 10, 2008) **would in no way affect my subject case**, I had deposited $1143 with TD-A. The Panel apparently was not aware of this fact, despite **the fact** that the Respondents' Case Summary ("**Revised** Summary of their original **Answer**") submitted on October 28, 2009 (i.e., after the submission of my Motion **(Revised Case Summary of my Statement of Claim)**), dated October 25, 2009, **did not state or mention anything about their previously filed Counter claim for $1143. However,** at least 20 days before the Panel hearing, **my** referenced **motion, dated October 16, 2009, e-mailed on October 25, 2009, to FINRA with a copy to the Respondents' Counsel**; my e-mail, dated October 26, 2009 (in response to the Respondents' e-mail, dated October 26, 2009, addressed to you) to you (FINRA) with a copy to the Respondents' Counsel; my **Answer**/response, dated October 28, 2009, to the Respondents' revised Case Summary/Answer (**without the counter claim of $1143**), dated October 28, 2009, sent to FINRA and to the Respondents' Counsel; and my rebuttal/arguments, dated October 31, 2009, to the Respondents' Case Summary (**revised Answer w/o the Counter Claim of $1143**), dated October 28, 2009, **to the Panel and also to the Respondents' Counsel were all submitted simultaneously, along with quite a few additional evidentiary documents, to the Panel as well as to the Respondents' Counsel BEFORE the Panel hearing began and, subsequently, during the hearings, all of the above referenced exhibits were accepted (as the claimant's testimonies) by the Panel and the Respondents' Counsel. And this was and still is critical for ultimately attaining justice for the claimant's case.**

Now, I must admit that, I, not being an attorney and not willing to pay contingent 40% of the Award to an attorney for whom I must truly produce and prepare all the paper work anyway, probably was not wise, especially so when I now review the "description" of the Panel's Award.

As I had stated up front to the Panel that I, 72-year old, had never ever been involved or participated in any lawsuit or arbitration of any kind before and that I was presenting the subject arbitration case 100% true and factual and that if anyone can only show (not necessarily prove) that I knowingly or even unknowingly **made any false statement** in any of my entire submissions to the FINRA, to the Respondents' Counsel and/or to the Panel, I would voluntarily withdraw the case. I still stand on my above statement. However, it is clear to me that the honorable Panel failed me on the grounds of certain FINRA logistics and/or codes, etc.. I was and still am under the impression that any arbitration and for that matter any judicial system should depend and rest more on the truth and facts than anything else. *But, unfortunately, that is not what I see from the Panel's description of the Award. Either the lack of proper delivery of all of the claimant's case materials and communications to the (new) panel or, for one reason or another, the latter's lack of fully reviewing and understanding all of the submitted case materials and the underlying disputed issues (mainly pertaining to TD-Ameritrade, Inc. - the company) can only be other possible reasons for the Panel's issuance of a clearly unjustified Award, dated November 20, 2009.*

For example, my entire dispute/case primarily was based on the TD-A's chronic problematic online trading system or operation for certain complex options, **which, despite the claimant's several complaints and TD-A's own admittance was faulty and unreliable and it expressly needed an overhaul, had never been fixed and, consequently, TD-A had miserably failed to provide a reliable online trading system to the claimant, who was their most active and loyal client for many years.** And this stated failure of **TD-A (i.e., the company and not its two brokers)** was the **initial <u>root cause</u>** of the initial ~$400,000 margin debit in the account, which left the real-time account with a liquidation value of ~ $50K, which then translates into a <u>**Liquidation-to-Debt ratio of dangerously low 12.5%. However, despite this dangerously low ratio,**</u> TD-A still extended additional margin of ~ $250K and authorized the claimant to buy 20K GM shares, which brought the total number of GM shares in the account to 70,000, with the debt now being ~ $630,000 and the stated liquidation-to-debt ratio of only about 8%. In order to **desperately reduce the literally TD-A-caused/induced ballooning debt of ~ $630 K in the account, <u>the claimant placed several legitimate online orders to sell up to 700 WGMAB (GM 2010 Leap call for Strike price of $10) COVERED Calls that do not require margin maintenance requirements and would have brought in ~ $300K and reduced the margin debt to ~ $425K after closing the 500 WGMAC covered short calls in the account.</u> But, TD-A,** i.e., *the TD-A company* **and its overall business structure/operation/mechanism/system** (and <u>not only the two brokers</u>, viz., Mr. Brian Furrow and Mr. Frank Sullivan, on whom the Panel apparently was *totally focussed* and accordingly has interpreted in the Award) **rejected all the legitimate covered call options orders placed**, although the brokers probably could have assisted the client in some way to convince the <u>company's managing superiors</u> to put the disputed trades back on track at the claimant's costs and any losses, especially considering the overall, totally genuine environment, circumstances and pictures of the account and the dispute.

**At any rate, it essentially was the TD-A's (<u>not the two brokers'</u>) fault in extending additional margin debt of ~$250 and authorizing purchase of 20K GM shares, when the account already had a dangerously low liquidation-to-debt ratio of only 12.5%. This unwarranted and wrong advance of ~ $250K margin to the claimant by TD-A for buying stocks clearly was going to further reduce/lower the stated ratio to yet another dangerously low level of ~ 8, at which TD-A said they had to sellout 40K GM shares, 20K of which actually were purchased just a few minutes ago with the TD-A's authorized funds made available in real time and with the due approval of TD-A (organization/company and not the brokers).**

**In fact, as I have repeatedly stressed in my various simultaneous submissions to all the three, viz. the respondents' counsel, the FINRA, and the Panel, this major error or wrongdoing of TD-A in extending a margin of ~ $250K, when the L-to-D ratio already was at a dangerously low level of ~ 12.5 and especially when the account had a margin call from the previous day and the only stock of interest (GM) had already tumbled ~ 10% on a GS news, <u>was what essentially and in the first place triggered the TD-A in-house sellout of 40K GM shares</u> -- 20K of which were purchased just a few minutes ago with the full authorization of TD-A and with the real-time margin funds extended by TD-A.**

<u>**Coupled with the above stated wrong action by TD-A are the following critical wrong actions by TD-A**</u> **(i.e., "the company" and not the two brokers only, who possibly could, as expected, assist and help the Claimant in his repeated requests and begging for putting the account back on track in a timely manner at the Claimant's own costs/losses due to any unfavorable price fluctuations of the disputed securities involved) significantly contributed to the sellout of 40,000 GM shares on June 26, 2008:**

1) **Denying the claimant's legitimate sell orders of up to 700 WGMAB COVERED Calls** (which, by the way, depending on the margin loan the claimant wanted to carry going forward, could and would have been 700 WGMAA or even 700 WGMAZ, all of which were legitimate and required no margin maintenance. Please review the claimant's colored chart, the first exhibit, and other exhibits that were

submitted by the claimant before the hearing began and were accepted as testimonies by the honorable Panel **and the** respondents' counsel as well, for properly understanding $ values of the GM Leap options of various strike prices. **At the minimum**, the claimant's legitimate 700 WGMAB Leap calls **(500+200 calls corresponding to the claimant's 50K + 20K legitimate GM long shares in the account)** would have brought in ~ $300,000**, which was also calculated to be true by one of the respondents' witnesses brought by the counsel).**

2) Even after the two massacres of the account on June 26, 2008, and October 10, 2009, TD-A **(the company managers,** and **not** necessarily the two brokers that the Panel apparently has focussed in the Award) arrogantly denied the claimant's repeated legitimate requests to put the disputed trades back on track at the claimant's losses, if any due to the reasons mentioned several times previously.

Thus, the TD-A's Risk Protection sellout of 40K GM shares, which, as described above, was undoubtedly and in the first place was caused and triggered by the TD-A's own problematic operation, serious errors in extending huge margin debt, and illegal denials of the claimant's perfectly legitimate sell orders of GM-COVERED calls, **destroyed the account's sustainability on June 26, 2008, and its ultimate death (total and permanent destruction) on October 10, 2008.** Even after the TD-A-caused massacres of the claimant's account, the TD-A (the company) arrogantly denied the claimant's sincere, serious and timely requests/begging for putting the disputed trades back on track at the claimant's losses if any. As it had been clearly stated in the claim and even illustrated in the pre-hearing (i.e., before the hearings began) submissions (accepted by the Panel), a new deposit of only ~$50K or securities adjustments of equivalent amount by the next business day to meet any margin call or account deficiency created in the account on June 26, 2008, and a timely-offered deposit of $10K on October 10, 2008, would have taken care of the account. The client had always met numerous such margin calls and/or account deficiencies in the past 12 months alone, when the claimant had deposited ~ $530K into the a/c and, contrary to the allegation by the Respondents' witness, did not withdraw any significant amount out of it. Furthermore, TD-A had collected hundreds of thousand dollars in TRANSPARENT commissions and interest charges alone in the last 10-year period, during which the claimant conducted trades worth millions of dollars (up to $ 7M) annually. The above-described mal-actions of TD-A certainly do not reflect a good ethical business practice or relationship with the claimant (please again review the Claimant's entire case submissions, barring certain FINRA codes that may be limiting factors.

As you may notice from my FINRA- and Panel- accepted submissions [viz., *my Motion/Case Summary, dated October 16, which was e-mailed to all the parties and FINRA on October 25, 2009, and my Response, dated October 28, 2009, to the Respondents' Case Summary (i.e., their revised Answer **without** the original counter claim of $1143), dated October 28, 2009, which undoubtedly was the response/Answer to my Motion (Summary of the Claim), dated October 25, 2009]* that I, the claimant, indeed had made a **relief request** for an appropriate compensation of $1.5 M, which was comprised of $750K from 700 WGMAZ covered calls (which, as described above as well as in my claim submissions, were to be legitimately "swapped" (in order to considerably reduce the TD-A-caused/generated huge margin debit/loan of almost $700K) from the legitimate 700 WGMAB covered calls that TD-A irresponsibly, irrationally and illegally had denied on June 26, 2008. So, please again review the case claim in its entirety, including 1) all the exhibits submitted and accepted by the Panel; 2) the delay in the Panel hearings; 3) the lapsed time of more than 16 months during which my family and I have suffered unparalleled financial, emotional and related damages; and 4) the justice (based on truth and logic) that I was seeking from the Land of Justice in the world. It seems that the apparently good Panel somehow has ignored the underlying serious problems and wrong doings of the respondents (**essentially the TD-A, Inc.**) that really caused a total destruction of the account and hence that of the account holder and instead put the FINRA codes, rules, mechanics, etc., above the truth, logic and humanity about the case. And that really is sad.

As instructed in your covering letter, I shall not and must not communicate with the Panel. However, I wanted to once again describe my truthful case against TD-A for your (FINRA) in-depth review of all the submissions/exhibits **accepted by the Panel and the respondents**. I know and fully understand that I did not have an attorney when the other (guilty, but rich and influential) party (TD-A, Inc.) had a counsel with three witnesses, who most likely hurt me as I can see from the Award description**, even though I had**

**submitted all the required evidences and evidentiary materials to all the panel members and also to the Respondents before the hearings began and the Panel members reportedly have stated that they all had read all of the claim materials submitted to them.**

Well, in any case, I have the right to file a motion to vacate Award, which I shall now explore with all the help, I possibly can get, including an attorney. You have been a good professional and I do appreciate that. I also appreciate the manner in which the honorable Panel conducted the hearings. However, I am not satisfied with the Panel's award, mainly because the panel members somehow totally ignored the claimant's main, underlying issues and complaints about and **against TD-A, Inc. (the company)**. I am hoping that FINRA and the arbitrators would accept my request to give a thorough review of the case in the light of the facts again presented in this letter.

Finally, I understand that a motion to vacate the Award and specially the subsequent lawsuit will be lengthy and expensive to get to the bottom of the case and seek legal justice. To avoid all of that, I am sending this genuine letter to the respondents (i.e., their counsel) as well for their consideration of any modification of the award they possibly can offer.

Best regards, as always.

*[signature]*
Paul Sawhney
4709-Sheridan Avenue
Metairie, LA 70002


Cc:
Ms. Janine Lucas, Esq. and Mr. Miles Hart, Esq. - the counsel for TD-Ameritrade
To the Panel (**through** Ms. JoAnne Sorrentino, CA, FINRA)

# FINRA
Financial Industry Regulatory Authority

VIA MAIL, EMAIL OR FACSIMILE
PAGE(S): 11

504-455-8568

November 20, 2009

Amar Paul Singh Sawhney
4709 Sheridan Ave.
Metairie, LA 70002

Subject: FINRA Dispute Resolution Arbitration Number 08-04168
Amar Paul Singh Sawhney, TOD Jagtit Singh & Amarjit (Timothy) Sawhney vs. TD Ameritrade, Mr Brian Furrow, et al.

Dear Mr. Sawhney:

In accordance with the Code of Arbitration Procedure I enclose the decision reached by the arbitrator(s) in the above-referenced matter.

## Responsibility to Pay Monetary Award

Pursuant to the Code of Arbitration Procedure[1] the responsible party must pay any monetary awards within 30 days of receipt unless a motion to vacate has been filed with a court of competent jurisdiction. If an award is not paid within 30 days, the responsible party must pay post-judgment interest at the legal rate or as provided in the award by the arbitrator(s).

## Tracking Payment of Award

FINRA Dispute Resolution has implemented a system of monitoring and tracking compliance with arbitration awards by members and associated persons. We request prevailing claimants to notify us in writing when their awards have not been paid within 30 days of receipt of the award, and require member firms to certify in writing that they have complied with awards against them or their associated persons.

Written notification concerning award compliance or lack thereof must be directed to:

Avichai Badash
FINRA Dispute Resolution
One Liberty Plaza
165 Broadway, 52nd Floor

---

[1] Customer Code Rule 12904
Industry Code Rule 13904
Old Code Rule 10330(h)

Investor protection. Market integrity.

Dispute Resolution
Southeast Regional Office

Boca Center Tower 1
5200 Town Center Circle
Suite 200
Boca Raton, FL
33486-1015

t 561 416 0277
f 301 527 4868
www.finra.org

New York, NY 10006
212-858-4325 (tel) 301-527-4739 (fax)

### Expedited Suspension Proceedings for Non-Payment of Awards

Members and associated persons who do not comply with an award in a timely manner are subject to expedited suspension proceedings as set forth in Rule 9554.

### Right to File Motion to Vacate Award

All awards are **final** and are not subject to review or appeal by the arbitration panel or by FINRA Dispute Resolution. Any party wishing to challenge the award must make a motion to vacate the award **in a federal or state court** of appropriate jurisdiction pursuant to the Federal Arbitration Act, 9 U.S.C. § 10, or applicable state statute. There are limited grounds for vacating an arbitration award, and a party must bring a motion to vacate within the time period specified by the applicable statute. Parties and counsel should consult federal and state statutes and case law to determine the appropriate court, standards, and time limitations in their individual circumstances. FINRA Dispute Resolution is not authorized to provide legal advice concerning a motion to vacate.

A motion to vacate, confirm, or modify an arbitration award is a matter only between the parties to the arbitration. FINRA Dispute Resolution is not a proper party to post-award motions and should not be named as a party to any post-award motion. However, for cases filed on or after April 12, 2004, if the award contains expungement relief, or if a party seeks expungement relief in court, there may be a duty to name FINRA as a party as provided in Rule 2080.

### Questions Concerning Award

Please direct any questions regarding this award to me. **The parties must not contact the arbitrators directly.**

### Forum Fees

You will receive under separate cover an invoice that reflects the fees assessed and any outstanding balance or refund due. **Fees are due and payable to FINRA Dispute Resolution upon receipt of the invoice and remitted to the address specified on the invoice.**

Any applicable refunds will also be sent under separate cover approximately 45 days after the case closes. Pursuant to the Code of Arbitration Procedure, "Any refunds of fees or costs incurred under the Code will be paid directly to the named parties, even if a non-party made payment on behalf of the named parties."[2]

All questions regarding payment of fees and refunds should be directed to FINRA Finance at (240) 386-5910.

### Arbitration Evaluation

As a service organization, the primary goals of FINRA Dispute Resolution are the integrity of its process and the satisfaction of its clients. To ensure that we are meeting your needs and

---

[2] Customer Code Rule 12902(e)
   Industry Code Rule 13902(e)

satisfying our commitment to you, **we need to hear from you.** If you have not already done so, please take the time to complete an evaluation of our services, the process, and the arbitrator(s) assigned to your case. For your convenience, we have now made it possible for you to evaluate our services using the Internet. Please direct your Web browser to http://www.finra.org/arbevaluation.

If you do not have Internet access, or have difficulty completing the evaluation form online, we will send a hard copy evaluation form to you. The completed evaluation form should be mailed in to the address indicated below. If you need a hard copy of the evaluation form, please contact the undersigned. Whenever possible, however, we encourage you to use the new online version, as it will help us to review your feedback in a more expeditious manner. Your feedback is a valuable and necessary component in our efforts to serve you better.

Very truly yours,

/S/

JoAnne Sorrentino, CP
Senior Case Administrator
Phone: 561-416-0277
Fax: 301-527-4868
FL-Main@finra.org

JYS:kr1:LC09A
idr: 08/25/2009


RECIPIENTS:
    Janine M. Lucas, Esq., Brian Furrow
    Saretsky Hart Michaels & Gould, PC, 995 South Eton, Birmingham, MI 48009

    Janine M. Lucas, Esq., Frank Sullivan
    Saretsky Hart Michaels & Gould, PC, 995 South Eton, Birmingham, MI 48009

    Janine M. Lucas, Esq., TD Ameritrade, Inc.
    Saretsky Hart Michaels & Gould, PC, 995 South Eton, Birmingham, MI 48009

    Amar Paul Singh Sawhney
    4709 Sheridan Ave., Metairie, LA 70002

# Award
## FINRA Dispute Resolution

In the Matter of the Arbitration Between:

**Name of the Claimant**
Amar Paul Singh Sawhney

Case Number: 08-04168

**Names of the Respondents**
TD Ameritrade, Inc.
Brian Furrow
Frank Sullivan

Hearing Site: New Orleans, Louisiana

Nature of the Dispute: Customer vs. Member and Associated Person.

## REPRESENTATION OF PARTIES

Amar Paul Singh Sawhney, hereinafter referred to as "Claimant", appeared pro se.

For TD Ameritrade, Inc. ("Ameritrade"), Brian Furrow ("Furrow") and Frank Sullivan ("Sullivan"), hereinafter collectively referred to as "Respondents": Miles Hart, Esq., Saretsky Hart Michaels & Gould, PC, Birmingham, Michigan.

## CASE INFORMATION

Statement of Claim filed on or about: November 10, 2008.
Claimant signed the Submission Agreement: November 3, 2008.
Respondents' Answer and Affirmative Defenses to the Statement of Claim and Respondent TD Ameritrade's Counterclaim filed on or about: January 20, 2009.
Respondent Ameritrade signed the Submission Agreement: January 8, 2009.
Respondent Furrow signed the Submission Agreement: February 10, 2009.
Respondent Sullivan signed the Submission Agreement: November 19, 2009.
Claimant's Response to Respondents' Answer filed on or about: January 23, 2009.

## CASE SUMMARY

Claimant asserted the following causes of action: 1) negligence; 2) failure to execute; and, 3) failure to supervise. The causes of action relate to, among other things, Claimant's margin trading of General Motors Corporation Options.

Unless specifically admitted in their Answer, Respondents denied the allegations made in the Statement of Claim and asserted various affirmative defenses. Additionally, Respondent Ameritrade asserted the cause of action of breach of contract. The cause of action relates to Claimant's alleged failure to reimburse account deficits to Respondent Ameritrade when the equity in Claimant's margin account fell below required levels.

NOV. 20. 2009 3:02PM
FINRA Dispute Resolution
Arbitration No. 08-04468
Award Page 2 of 5

Case 2:09-cv-07651-EEF-SS  Document 1-1  Filed 12/10/09  Page 9 of 13

NO. 1435  P. 9/11

## RELIEF REQUESTED

In the Statement of Claim, Claimant requested: 1) either the restoration of his account to its June 25, 2008 level or compensatory damages in the amount of $1,500,000.00; 2) unspecified punitive damages; 3) interest; and, 4) costs.

In their Statement of Answer, Respondents requested that: 1) the Statement of Claim be denied in its entirety; 2) Respondents Furrow and Sullivan be dismissed; and, 3) Claimant's complaint be expunged from Respondent Furrow's and Sullivan's Central Registration Depository ("CRD") records. Additionally, in Respondent Ameritrade's Counterclaim, Respondent Ameritrade requested: 1) an Award against Claimant for compensatory damages in the amount of $1,143.25; 2) statutory interest from the date of the debt; 3) costs; and, 4) reasonable attorneys' fees.

Claimant did not delineate a relief request in his Response to Respondents' Answer.

At the close of the hearing, Respondents Furrow and Sullivan reasserted their request for expungement.

## OTHER ISSUES CONSIDERED AND DECIDED

The Panel acknowledges that they have each read the pleadings and other materials filed by the parties.

After the Claimant presented his case-in-chief, Respondents made an ore tenus Motion for a Directed Verdict, to which Claimant objected. The Panel denied Respondents' motion.

On November 20, 2009, the Panel met in executive session for the purpose of reviewing and finalizing its decision with respect to the Award in this matter.

The parties have agreed that the Award in this matter may be executed in counterpart copies or that a handwritten, signed Award may be entered.

## AWARD

After considering the pleadings, the testimony and evidence presented at the in-person recorded hearing, and the post-hearing submissions (if any), the Panel has decided in full and final resolution of the issues submitted for determination as follows:

The Panel determined that Claimant failed to meet his burden of proof on the issues of liability and damages. Accordingly, Claimant's claims are dismissed, with prejudice.

Claimant is liable on the counterclaim of breach of contract and shall pay to Respondent Ameritrade compensatory damages in the amount of $1,143.25, statutory interest specifically excluded.

The Panel recommends the expungement of all reference to the above captioned arbitration from Respondents Furrow's and Sullivan's registration records maintained by

the CRD, with the understanding that pursuant to Notice to Members 04-16, Respondents Furrow and Sullivan must obtain confirmation from a court of competent jurisdiction before the CRD will execute the expungement directive.

Unless specifically waived in writing by FINRA, parties seeking judicial confirmation of an arbitration award containing expungement relief must name FINRA as an additional party and serve FINRA with all appropriate documents.

Pursuant to Rule 12805/13805 of the Code of Arbitration Procedure (the "Code"), the Panel has made the following Rule 2080 affirmative findings of fact:

The claim, allegation, or information is factually impossible or clearly erroneous; the registered persons were not involved in the alleged investment-related sales practice violation, forgery, theft, misappropriation, or conversion of funds; and, the claim, allegation, or information is false.

The Panel has made the above Rule 2080 findings based on the following reasons:

Based upon its recorded hearing, the Panel was satisfied that the testimony and documentary evidence established that Respondents Furrow and Sullivan were innocent victims in the allegations made by Claimant, and were not involved in the investment-related sales practice.

Any and all claims for relief not specifically addressed herein, including Claimant's request for punitive damages and Respondent Ameritrade's request for attorneys' fees, are denied.

## FEES

Pursuant to the Code, the following fees are assessed:

### Filing Fees
FINRA Dispute Resolution assessed a filing fee* for each claim:
| | |
|---|---|
| Initial claim filing fee | = $1,800.00 |
| Counterclaim filing fee | = $ 350.00 |

*The filing fee is made up of a non-refundable and a refundable portion.

### Member Fees
Member fees are assessed to each member firm that is a party in these proceedings or to the member firm(s) that employed the associated person(s) at the time of the event(s) giving rise to the dispute. Respondent Ameritrade is a member firm and a party. Accordingly, the following member fees are assessed:
| | |
|---|---|
| Member surcharge | = $2,800.00 |
| Pre-hearing process fee | = $ 750.00 |
| Hearing process fee | = $5,000.00 |

NOV. 20. 2009 2:03PM ...s ..spute Resolution No. 1435 P. 7/11
Arbitration No. 08-04168
Case 2:09-cv-07651-EEF-SS   Document 1-1   Filed 12/10/09   Page 11 of 13
Award Page 4 of 5

### Discovery-Related Motion Fees
Fees apply for each decision rendered on a discovery-related motion.

| | |
|---|---|
| One (1) Decision on a discovery-related motion on the papers with (1) one arbitrator @ $200.00 | = $ 200.00 |
| Total Discovery-Related Motion Fees | = $ 200.00 |

The Panel has assessed $100.00 of the discovery-related motion fees to Claimant.
The Panel has assessed $100.00 of the discovery-related motion fees to Respondents, jointly and severally.

### Hearing Session Fees and Assessments
The Panel has assessed hearing session fees for each session conducted. A session is any meeting between the parties and the arbitrator(s), including a pre-hearing conference with the arbitrator(s) that lasts four (4) hours or less. Fees associated with these proceedings are:

One (1) Pre-hearing session with the Panel @ $1,200.00/session     = $1,200.00
Pre-hearing conference:   March 23, 2009       1 session

Four (4) Hearing sessions @ $1,200.00/session      = $4,800.00
Hearing Dates:   November 17, 2009    2 sessions
                 November 18, 2009    2 sessions

Total Hearing Session Fees                          = $6,000.00

The Panel has assessed $3,000.00 of the hearing session fees to Claimant.
The Panel has assessed $3,000.00 of the hearing session fees to Respondents, jointly and severally.

All balances are payable to FINRA Dispute Resolution and are due upon receipt.

### ARBITRATION PANEL

| | | |
|---|---|---|
| Allen J. Krouse, III | - | Public Arbitrator, Presiding Chairperson |
| Brian P. Jakes, Sr. | - | Public Arbitrator |
| Robert C. Upton, Jr. | - | Non-Public Arbitrator |

### Concurring Arbitrators' Signatures

/s/
Allen J. Krouse, III
Public Arbitrator, Presiding Chairperson

November 20, 2009
Signature Date

/s/
Brian P. Jakes, Sr.
Public Arbitrator

November 20, 2009
Signature Date

/s/
_____
Robert C. Upton, Jr.
Non-Public Arbitrator

November 20, 2009
Signature Date

November 20, 2009
_____
Date of Service (For FINRA Dispute Resolution office use only)

FINRA Dispute Resolution
Arbitration No. 08-04168
Award Page 4 of 5

### Discovery-Related Motion Fees

Fees apply for each decision rendered on a discovery-related motion.

| | |
|---|---|
| One (1) Decision on a discovery-related motion on the papers with (1) one arbitrator @ $200.00 | = $ 200.00 |
| **Total Discovery-Related Motion Fees** | **= $ 200.00** |

The Panel has assessed $100.00 of the discovery-related motion fees to Claimant.
The Panel has assessed $100.00 of the discovery-related motion fees to Respondents, jointly and severally.

### Hearing Session Fees and Assessments

The Panel has assessed hearing session fees for each session conducted. A session is any meeting between the parties and the arbitrator(s), including a pre-hearing conference with the arbitrator(s) that lasts four (4) hours or less. Fees associated with these proceedings are:

| | | | |
|---|---|---|---|
| One (1) Pre-hearing session with the Panel @ $1,200.00/session | | | = $1,200.00 |
| Pre-hearing conference: | March 23, 2009 | 1 session | |
| | | | |
| Four (4) Hearing sessions @ $1,200.00/session | | | = $4,800.00 |
| Hearing Dates: | November 17, 2009 | 2 sessions | |
| | November 18, 2009 | 2 sessions | |
| **Total Hearing Session Fees** | | | **= $6,000.00** |

The Panel has assessed $3,000.00 of the hearing session fees to Claimant.
The Panel has assessed $3,000.00 of the hearing session fees to Respondents, jointly and severally.

All balances are payable to FINRA Dispute Resolution and are due upon receipt.

### ARBITRATION PANEL

Allen J. Krouse, III   -   Public Arbitrator, Presiding Chairperson
Brian P. Jakes, Sr.    -   Public Arbitrator
Robert C. Upton, Jr.   -   Non-Public Arbitrator

**Concurring Arbitrators' Signatures**

_____                    11/20/09
Allen J. Krouse, III                                Signature Date
Public Arbitrator, Presiding Chairperson


_____                    _____
Brian P. Jakes, Sr.                                 Signature Date
Public Arbitrator