## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **AMAR PAUL SINGH SAWHNEY** | * | **CIVIL ACTION** |
| | * | |
| **VERSUS** | * | **NO. 09-7651** |
| | * | |
| **TD AMERITRADE, INC.** | * | **SECTION "L"(1)** |

### ORDER & REASONS

Before the Court are Plaintiff Amar Paul Singh Sawhney's Motion to Vacate (Arbitration) Award, Rec. Doc. Nos. 1, 3, and Defendant TD Ameritrade, Inc.'s Motion to Confirm Arbitration Award.  Rec. Doc. No. 10.  For the following reasons, Plaintiff's Motion to Vacate (Arbitration) Award is DENIED, and Defendant's Motion to Confirm Arbitration Award is GRANTED.

## I.        BACKGROUND

The present case arises from an arbitration award which resolved a dispute involving online securities brokering.  Plaintiff Amar Paul Singh Sawhney traded complex spread options on margin using the online trading platform of Defendant TD Ameritrade, Inc., a discount securities broker-dealer.[1]  Plaintiff traded heavily in General Motors ("GM"), which eventually

---

[1]Trading on margin involves trading with borrowed money.  A margin loan is secured only by the securities in an account, thus placing the lender's capital at a risk if the borrower's loan exceeds the value of the securities.  There are limits on how much a customer can borrow. If the equity in a customer's account falls below required levels, the customer must immediately deposit additional cash or securities into the account.  Alternatively, the lender can raise the equity levels by liquidating securities or closing out positions in the customer's account.  Under both the terms of the customer agreement entered into by the parties and securities regulations, the firm can take such action without prior notice to the customer.  *See* Def. Ex. 1, Rec. Doc. No. 8.

became bankrupt.  As the price of GM shares plummeted, so did the equity in Plaintiff's account, resulting in margin deficits.  In response to these deficits, in June 2008 and again in October 2008, Defendant liquidated securities in Plaintiff's account.  Plaintiff complained to Defendant that, (1) the margin deficit was caused by a defect in the online trading system, and (2) that he should have been given the opportunity to resolve the margin deficit before liquidating securities.  Plaintiff requested that the liquidation be reversed, restoring his account.  Defendant investigated the complaint and denied Plaintiff's request.  In response, Plaintiff filed complaints with the regulatory arms of the Financial Industry Regulatory Authority ("FINRA") and the United States Securities and Exchange Commission ("SEC").  Both declined to take action.

The terms of the account agreement between the parties provided that any account-related disputes were to be resolved through arbitration sponsored by FINRA.  On or about November 5, 2008, Plaintiff filed a FINRA arbitration claim against Defendant and two of its customer service representatives, Frank Sullivan and Brian Furrow.  *See* FINRA Case No. 08-4168.  An arbitration hearing was held on November 17-18, 2009, in New Orleans, Louisiana.  On November 20, 2009, the three-member panel of arbitrators entered a unanimous decision denying Plaintiff's claim for relief in its entirety.  The arbitration panel found that Plaintiff failed to meet his burden of proof as to liability and damages.  The panel also specifically found that the claims against Sullivan and Furrow were without merit and recommended that the arbitration action be expunged from their Central Registration Depository ("CDR") records[2].

---

[2]Central Registration Depository is a collection of information pertaining to persons employed in the securities industry.  Some of the information contained on a broker's CRD record, including customer arbitration claims, is accessible by the public.  Pursuant to securities regulations, a customer arbitration claim must be disclosed on a broker's CRD unless and until such information is expunged.

Thereafter Plaintiff made repeated requests to FINRA for reconsideration of the award.  These requests were denied and Plaintiff filed the present action *pro se*.

## II.   PRESENT MOTIONS

### A.   Plaintiff's Motion to Vacate Arbitration Award[3]

#### 1.   Plaintiff's Position

Plaintiff filed a Complaint for Motion to Vacate Award, Rec. Doc. Nos. 1, 3, alleging that the Defendant's operational problems, wrongdoings, and negligence on June 29, 2008, and October 10, 2008, involving Plaintiff's stock and options trading, depleted Plaintiff's entire life savings of approximately $1,000,000.00.  Plaintiff raises the following four arguments in support of his Motion.  First, Plaintiff argues that Defendant failed to resolve its well-documented and admitted operational problems with its online trading system for certain complex options which resulted in a margin debt of $400,000.00 in Plaintiff's account, when the margin debt was previously $45,000.00.

Second, Plaintiff argues that Defendant wrongfully over-extended the margin debt and buying power in real time, despite the already dangerous high margin advance debt of $400,000.00, and extended, in real time, an additional $250,000.00 of margin debt while the critical liquidation-to-debt ratio was at a dangerously low level of 12.5%.  Plaintiff further claims that Defendant permitted him to purchase 20,000 GM shares with the $250,000.00 margin advance, increasing the margin debt to $630,000.00, after which Plaintiff attempted to sell covered leap calls which would have reduced the high margin debt and improved the critical

---

[3]The Fifth Circuit requires courts to liberally construe the pleadings of pro se litigants, *see Andrade v. Gonzales*, 459 F.3d 538, 543 (5th Cir. 2006), thus this Court treats Plaintiff's "Complaint for Motion to Vacate Award" as a motion to vacate arbitration award.

liquidation-to-debt ratio, but Defendant rejected this legitimate order while at the same time permitting him to purchase 5000 more GM shares with the real-time margin funds made available.

Third, Plaintiff argues that Defendant wrongfully denied his legitimate sell orders of 700 GM covered calls for $300,000.00 which would have reduced the high margin debt and prevented Defendant's forced sell-out of the Plaintiff's 40,000 GM long shares, 20,000 of which had been legitimately purchased just a few minutes earlier with the approval of Defendant and with real-time margin funds made available by Defendant.

Fourth, Plaintiff argues that Defendant's forced sell-out of June 26, 2008, of the Plaintiff's 40,000 GM shares and forced close-out on October 10, 2008, both without Plaintiff's knowledge, were wrongful and a result of operational problems.  Plaintiff claims that Defendant used "delay tactics" on both occasions to deny Plaintiff's requests to return the disputed trades at the Plaintiffs own cost and/or loss.  Plaintiff further claims that the June 26 sell-out destroyed the sustainability of his account.

In summary, Plaintiff contends that the facts presented to the arbitration panel demonstrate that he is entitled to at least $750,000.00 for the financial, emotional, and related losses caused by the Defendant.  Plaintiff claims that the panel, in reaching its decision, failed to fully understand the issues underlying the Defendant's operation and errors, and it failed to read Plaintiff's submitted case materials.

### 2.    Defendant's Position

Defendant filed a Response in Opposition to Motion to Vacate Arbitration Award and Request for Attorneys' Fee.  Rec. Doc. No. 8.  Defendant argues that the arbitration agreement is

valid and enforceable pursuant to the Federal Arbitration Act.  Defendant further argues that the law permits the vacation of arbitration awards only on very narrow statutory grounds, none of which are alleged or established by Plaintiff.  Defendant requests an award of attorneys' fees and costs.

### B.      Defendant's Motion to Confirm the Arbitration Award

#### 1.      Defendant's Position

Defendant filed a Motion to Confirm the Arbitration Award.  Rec. Doc. No. 10. Defendant requests that this Court enter an order, (1) confirming the arbitration award in FINRA Case No. 08-4168, and (2) directing FINRA to expunge all references to same from the CRD records of Brian Furrow and Frank Sullivan.

#### 2.      Plaintiff's Position

Plaintiff filed a Response in Opposition to Defendant's Motion to Confirm the Arbitration Award.  Rec. Doc. No. 15.  Plaintiff raises seven arguments in support of his Response in Opposition.  First, Plaintiff argues that the following demonstrate that the FINRA arbitration panel award was wrong: (1) the panel ordered Plaintiff to pay $1,143.00 for the Defendant's counterclaim when this amount was not requested by Defendant, (2) the panel chairman and another panel member withdrew from the case just weeks before the hearing date, and (3) the new panel chairman order that the $200 fee be divided equally despite a prior ruling ordering Defendant to pay the entire fee.

Second, Plaintiff claims that he was discouraged by the arbitration panel to fully present evidence to support his claims which prevented the panel from hearing and understanding the main, underlying issues of Plaintiff's claim.

Third, Plaintiff claims that the panel did not understand the trading and selling of covered call options, the most critical aspect of Plaintiff's claim, which demonstrated Defendant's various operational problems and wrongdoings.

Fourth, Plaintiff claims that the panel devoted most of the hearing to the testimony of Defendant's four witnesses, while providing Plaintiff very little time to present his evidence on the underlying issues of the case.

Fifth, Plaintiff claims that during his cross-examination of Defendant's financial consultant, (1) Plaintiff illustrated that Defendant's own log sheet shows Defendant wrongfully and illegally denied his sales of up to 700 WGMAB covered calls for approximately $300,000.00 on his 70,000 GM long shares in the account in real time, (2) the financial consultant agreed, based upon Defendant's logs, that the value of the denied covered calls was $290,000, and (3) the financial consultant misguided the panel by stating that Plaintiff lost his money because GM went bankrupt when in fact at that time the sale of GM covered call options were worth $300,000.

Sixth, Plaintiff claims that the panel did not read the case materials he submitted and the members of the panel lacked expertise in securities trading.

Seventh, Plaintiff alleges that Defendant and FINRA possibly had a favorable relationship based upon the fact that Defendant had knowledge of letters Plaintiff sent only to FINRA.

## III.     LAW & ANALYSIS

### A.     Standard of Review

"[A] district court's review of an arbitration award is extraordinarily narrow." *Prestige*

*Ford v. Ford Dealer Computer Servs,. Inc.*, 324 F.3d 391, 393 (5th Cir. 2003)(quoting *Gateway Technologies, Inc. v. MCI Telecomms. Corp*., 64 F.3d 993, 996 (5th Cir. 1995)).  "If an award is rationally inferable from the facts before the arbitrator, the award must be affirmed."  *Kergosien v. Ocean Energy, Inc.,* 390 F.3d 346, 353 (5th Cir. 2004)(citing *Antwine v. Prudential Bache Secs., Inc.*, 899 F.2d 410, 412 (5th Cir. 1990)).  The Fifth Circuit has held that "whatever indignation a reviewing court may experience in examining the record, it must resist the temptation to condemn imperfect proceedings without a sound statutory basis for doing so."  *Prestige Ford*, 324 F.3d at 394(quoting *Forsythe Int'l., S.A. v. Gibbs Oil Co.*, 915 F.2d 1017, 1022(5th Cir. 1990)).

## B.    Vacating or Confirming an Arbitration Award

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq*., provides statutory grounds for a district court to vacate an arbitration award in the absence of a contrary provision in the arbitration agreement.  *See Prescott v. Northlake Christian Sch.*, 141 Fed. App'x 263, 270 (5th Cir. 2005).[4]  In the present matter, the arbitration agreement provides that arbitrations are to be conducted pursuant to the Code of Arbitration of the Financial Industry Regulatory Authority ("FINRA").  *See* Def. Ex. 1, ¶ 12, Rec. Doc. No. 8-1.  However, FINRA does not contain a provision regarding vacation of an arbitration award, thus the Court must look to the FAA provisions on vacating an arbitration award.  *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983).

Pursuant to the FAA, the district court's ability to vacate an arbitration award is limited

---

[4]Arbitration awards can no longer be vacated on non-statutory, common law grounds. *See Citigroup Global Markets, Inc. v. Bacon*, 562 F.3d 349, 358 (5th Cir. 2009)(interpreting *Hall Street Assocs., L.L.C. v. Mattel, Inc*., 552 U.S. 577 (2008)).

to the four grounds enumerated in 9 U.S.C. § 10(a).  *Barahona v. Dillard's, Inc*., 2010 WL

1655322, at *2 (5th Cir. Apr. 26, 2010).  These four grounds are:

> (1) where the award was procured by corruption, fraud, or undue means;
>
> (2) where there was evident partiality or corruption in the arbitrators, or either of them;
>
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
>
> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.  9 U.S.C. § 10(a).

"Notably, Section 10(a) does not provide for vacatur of an arbitration award based on the merits

of a party's claim."  *The Householder Group v. Caughran*, 354 Fed. App'x 848, 851 (5th Cir.

2009).

   "An arbitration award must be confirmed unless the court determines the award should be

vacated under Section 10...of the FAA."  *Householder*, 354 Fed. App'x at 850.  Furthermore,

under the FAA,

> If the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration, and shall specify the court, then at any time within one year after the award is made any party to the arbitration may apply to the court so specified for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title.  If no court is specified in the agreement of the parties, then such application may be made to the United States court in and for the district within which such award was made.  9 U.S.C. § 9.

The arbitration agreement in the present matter provides that "[j]udgment, upon any award

rendered by the arbitrator, may be entered in any court having jurisdiction."  Def. Ex. 1, ¶ 12,

Rec. Doc. No. 8-1.  Accordingly, as the district court seated in New Orleans, Louisiana where

the arbitration award was made, this court must confirm the award unless notice of a motion to

vacate, modify, or correct is served on the adverse party within three months of the granting of

the award.  9 U.S.C. § 12.  This has occurred in the present matter, thus the Court must now

determine whether to vacate or confirm the arbitration award.

### C.    Whether the Arbitration Award Should be Vacated or Confirmed

Plaintiff does not allege that the arbitration award should be vacated due to any of the

reasons enumerated in Section 10(a) of the FAA.  Instead, Plaintiff devotes much of his

argument to challenging the merits of the arbitration panel's decision.  However, this Court

"do[es] not have the authority to conduct a review of an arbitrator's decision on the merits."

*Householder*, 354 Fed. App'x at 851(citing *Kergosien v. Ocean Energy, Inc*., 390 F.3d 346, 357

(5th Cir. 2004), *overruled on other grounds*, 562 F.3d 349 (5th Cir. 2009)).  Liberally construing

Plaintiff's arguments which do not pertain to the merits of his claim, the Court interprets

Plaintiff's request for vacatur of the arbitration award to be pursuant to Sections 10(a)(2) and/or

(3).  These grounds are now discussed in turn.

### 1.    *Section 10(a)(2): Evident partiality or corruption in the arbitrators*

Plaintiff alleges a "possible favorable relationship between FINRA and the [Defendant]"

on the basis that the Defendant mentioned in its Motion to Confirm the Arbitration Award that

Plaintiff had written several letters to FINRA when Plaintiff never informed the Defendant of

these letters.  Rec. Doc. No. 15.  The Court liberally construes this allegation as a claim under

Section 10(a)(2) for vacating an arbitration award due to evident partiality.  The Fifth Circuit has

characterized the burden for proving "evident partiality" as follows,

> To establish evident partiality based on actual bias, the party urging vacatur must produce
> specific facts from which 'a reasonable person would have to conclude that the arbitrator

was partial to one party.'  This is an 'onerous burden,' because the urging party must demonstrate that the alleged partiality is 'direct, definite, and capable of demonstration rather than remote, uncertain or speculative.'  *Householder*, 354 Fed. App'x at 852 (internal citations omitted).

Based upon this burden, the Court finds that Plaintiff fails to produce the specific facts needed to to demonstrate evident partiality by the arbitration panel.  Plaintiff claims that Defendant mentioned in its Motion to Confirm the Arbitration Award that Plaintiff wrote several letters to FINRA; however, upon reviewing this Motion, the Court did not find any such mention.  *See* Rec. Doc. No. 10.  Even if Defendant was aware that Plaintiff had written several letters to FINRA, this does not amount to "evident partiality" and thus warrant vacatur of the arbitration award under Section 10(a)(2).

      2.      *Section 10(a)(3): Misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced*

Plaintiff alleges that the arbitration panel improperly, (1) discouraged him from presenting evidence of his claims, (2) provided him very little time to present his case, (3) failed to read the materials he submitted, and (4) did not understand the case nor had the proper expertise to do so.  Rec. Doc. No. 15.  The Fifth Circuit has characterized an evidentiary error under Section 10(a)(3) as follows,

'The arbitrator is not bound to hear all of the evidence tendered by the parties; however, he must give each of the parties to the dispute an adequate opportunity to present its evidence and argument.  An evidentiary error must be one that is not simply an error of law, but which so affects the rights of a party that it may be said that he was deprived of a fair hearing.' *Householder*, 354 Fed. App'x at 851(quoting *Householder Group v. Caughran*, 567 F.Supp.2d 796 (E.D. Tex. 2008)).

Given this characterization, Plaintiff's allegations do not warrant vacatur of the arbitration award pursuant to Section 10(a)(3).  Plaintiff's record filings, particularly his response to Defendant's

Motion to Confirm Arbitration Award, contain contradictions indicating that he was given the opportunity to present his case to the panel and permitted a fair hearing.  For example, Plaintiff claims he was discouraged from fully presenting his case, but also alleges the following, (1) he was directed at the beginning of the arbitration proceeding to make a brief statement of his claim, (2) he was permitted to discuss and focus on his side of the case, (3) he conducted cross-examination of the Defendant's consultant witness, and (4) he was asked by the panel whether he had any witnesses to call.  *See* Rec. Doc. No. 15.  Furthermore, although Plaintiff claims that the panel did not read the materials he submitted, he quotes the panel chairman as stating "'[w]e now have read the case materials.'" Rec. Doc. No. 15.

Finally, Plaintiff alleges that the arbitrators did not understand the case and lacked the proper expertise to do so.  However, Plaintiff supports these allegations on the bases that (1) the arbitrators reached a different conclusion than the Plaintiff desired, and (2) the published resumes of the arbitrators did not include expertise in securities trading.  The Court need not address the former basis since it is not permitted to consider the merits of the arbitration.  *See Householder*, 354 Fed. App's at 851.  As to the latter, FINRA permits, and at time requires, that arbitrators be from outside the securities industry.  *See* FINRA, Arbitration & Mediation, Resources for Neutrals, http://www.finra.org/ArbitrationMediation/Neutrals/BecomeAnArbitrator/FAQ/ (last visited Sept. 7, 2010); *see also* FINRA Rule 12100.  Accordingly, the Plaintiff's own allegations demonstrate that he was given an adequate opportunity to present evidence and argument, and ultimately a fair hearing.

Because Plaintiff has failed to allege a statutory basis for vacating the arbitration award

and Defendant has sought confirmation of the arbitration award within one year of its entry, it is appropriate to confirm the award. *Householder*, 354 Fed. App's at 850; 9 U.S.C. § 9. Thus, the arbitration award at issue in the present matter, FINRA Case No. 08-4168, is confirmed.

### D.   Expunging CRD Records

Defendant seeks an order from this Court directing FINRA to expunge all references to FINRA Case No. 08-4168 from the CRD records of Brian Furrow and Frank Sullivan. *See* Rec. Doc. No. 10. Although Plaintiff challenges the arbitration award, he does not respond or object to the expungement of Mr. Furrow and Mr. Sullivan's CRD records.

A broker seeking to expunge information arising from a customer dispute from his CRD record must obtain an order from a court of competent jurisdiction directing such expungement or confirming an arbitration award containing expungement relief.[5] FINRA Rule 2080. The arbitration award at issue in the present matter recommended expungement of all reference to the arbitration from Mr. Furrow and Mr. Sullivan's CRD records "with the understanding that...[they] must obtain confirmation [of the arbitration award] from a court of competent jurisdiction before the CRD will execute the expungement directive." Def.'s Ex. 1, Rec. Doc. No. 10 (FINRA Arbitration Award). The Court determined above that the arbitration award in FINRA Case No. 08-4168 is confirmed, thus the CRD records of Brian Furrow and Frank Sullivan are to be expunged.

### E.   Attorneys' Fees & Costs

Defendant requests an award of attorneys' fees and costs incurred in conjunction with

---

[5]The parties' obligation to name FINRA as a party in order to obtain expungement of information from the CRD system has been waived since the arbitration panel made FINRA Rule 2080 affirmative findings of fact, negating this obligation. *See* Def.'s Ex. 1, Rec. Doc. No. 10.

defending the present lawsuit.  *See* Rec. Doc. No. 8.  Defendant bases this request upon the pre-dispute arbitration clause in the customer agreement entered into by the parties which provides, "[i]f any party unsuccessfully resists confirmation or enforcement of an arbitration award rendered under this Agreement, then that party shall pay all costs, attorneys' fees, and expenses incurred by the other party of parties in confirming or enforcing the award."  Def.'s Ex. 1, Rec. Doc. No. 8, § 12.  Given the clear language of this provision, Plaintiff is required to pay for Defendant's costs, attorneys' fees, and expenses incurred in defending the present action. Defendant shall present to the Plaintiff an accounting of costs and fees incurred in confirming the arbitration award.  Plaintiff may contest the accounting, and if so, further proceedings may be convened to resolve the dispute.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiff Amar Paul Singh Sawhney's Motion to Vacate (Arbitration) Award (Rec. Doc. Nos. 1, 3), is DENIED, and Defendant TD Ameritrade, Inc.'s Motion to Confirm Arbitration Award (Rec. Doc. No. 10), is GRANTED.


New Orleans, Louisiana, this 16th day of September, 2010.


UNITED STATES DISTRICT JUDGE